IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00117-PAB-KLM

US BANK, N.A.

      Plaintiff,

v.

STEWART TITLE GUARANTY COMPANY,

      Defendant.

---

### ORDER

---

      This matter is before the Court on Defendant's Motion for Summary Judgment [Docket No. 19] filed by defendant Stewart Title Guaranty Company ("Stewart Title") and a Motion for Partial Summary Judgment [Docket No. 20] filed by plaintiff U.S. Bank, N.A. ("U.S. Bank").  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## I.  BACKGROUND[1]

      This case arises out of a title insurance coverage dispute between U.S. Bank and Stewart Title.  On July 11, 2003, JoAnn Strock borrowed $120,000 from Aames Funding Corporation, d/b/a Aames Home Loan ("Aames").  Docket No. 20 at 4, ¶ 1.  The note was secured by a deed of trust encumbering a property in Denver, Colorado.  Docket No. 19 at 1, ¶ 1; Docket No. 20-1.  The deed of trust was recorded in the office of the Clerk and Recorder for the City and County of Denver.  Docket No. 19 at 1, ¶ 1.

---

[1]The following facts are undisputed unless otherwise indicated.

Ms. Strock represented that she held sole title to the property based upon a quitclaim deed purportedly bearing the signatures of Ms. Strock, Delmo Fresquez, and Laura Fresquez.  Docket No. 20 at 6, ¶ 5.

Aames obtained a lender's title insurance policy from Stewart Title.  The policy, number M-9726-365955, incorporated the terms, exclusions, conditions, and stipulations set forth in the American Land Title Association ("ALTA") Loan Policy (10-17-92).[2]  Docket No. 19-1 at 1, ¶ 3.  The policy named the insured as "AAMES FUNDING CORPORATION DBA AAMES HOME LOANS its successors and/or assigns."  Docket No. 19-1 at 3.  The relevant policy terms are set forth below.  Aames subsequently assigned the note to U.S. Bank.  Docket No. 19 at 2, ¶ 4.  U.S. Bank then became the beneficial owner of the note.  Docket No. 20 at 6, ¶ 6.  Wells Fargo N.A. ("Wells Fargo") was the loan servicer at all times relevant.[3]  *Id.*

In July 2010, Delmo Fresquez served Wells Fargo Home Mortgage of Hawaii, LLC with a complaint alleging that Ms. Strock had forged his signature on the quit claim deed used to secure the mortgage loan.[4]  Docket No. 20 at 6, ¶ 7.  On September 24, 2010, Bloom Murr & Accomazzo, P.C., claiming to represent Wells Fargo Home

---

[2]The ALTA is a real estate industry trade group that promulgates standard form title insurance policies used in several states.  11 Couch on Insurance § 159:1; *see, e.g.*, *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, 579 F.3d 304, 306 (3d Cir. 2009).

[3]According to U.S. Bank's amended complaint, a loan servicer "administers and collects mortgage loans on behalf of the holder of the beneficial interest in the mortgage."  Docket No. 8 at 3, ¶ 18 n.1.

[4]Stewart Title claims that it is without sufficient information to admit or deny the exact date that Ms. Fresquez served a complaint on Wells Fargo of Hawaii, LLC. Docket No. 21 at 1, ¶ 7.

Mortgage, sent a letter to Stewart Title's claims department representing that Wells Fargo Home Mortgage was an assignee of Aames.  Docket No. 20-7.  Wells Fargo's counsel stated that the quitclaim deed had been determined to be a forgery in a Colorado state court action and that Mr. Fresquez had served a complaint demanding that the deed of trust be declared void and released.  *Id.* at 1.  Wells Fargo's counsel "demand[ed] immediate defense and indemnity."  *Id.*

On November 8, 2010, Mr. Fresquez formally filed a complaint against Wells Fargo Home Mortgage of Hawaii, LLC (the "Fresquez suit") and, on November 18, 2010, that defendant removed the case to the United States District Court for the District of Colorado.  Case No. 10-cv-02818-WYD-MJW (Docket No. 1 at 1).  Mr. Fresquez' original complaint alleged that Ms. Strock forged signatures on the quitclaim deed and, as such, that the deed of trust was void and without effect.  Docket No. 19-4 at 3.  Mr. Fresquez alleged that he had attempted to contact the holder of the deed of trust and believed the holder to be Wells Fargo Home Mortgage of Hawaii, LLC.  *Id.* at 3.  Mr. Fresquez sought a declaration that both the quitclaim deed conveying the property to Ms. Strock and the deed of trust were void.  *Id.*

On January 20, 2011, Stewart Title denied Wells Fargo's demand, stating that "Wells Fargo is not the insured under the Policy and Stewart does not have any obligations to Wells Fargo with respect to the Action or any other matter."  Docket No. 19-3 at 3.  On February 9, 2011, Bloom Murr & Accomazzo, P.C. responded, admitting that U.S. Bank was the holder of the promissory note, but arguing that Wells Fargo had full authority to act on U.S. Bank's behalf with respect to the policy.  Docket No. 19-5 at 1.  The letter also stated:

> We now know why the plaintiff sued the incorrect entity.  The plaintiff's lawyer explained that he had spent hours at U.S. Bank attempting to verify that it owned the loan in question.  U.S. Bank stated that it did not, in fact own the loan.  One day while the plaintiff was at the property, someone came to mow the lawn and stated that Wells Fargo had sent him . . . . Therefore, he sued Wells Fargo of Hawaii, LLC thinking that it held the promissory note.

*Id.*  The letter reiterated a demand that Stewart Title defend the Fresquez suit.  *Id.* at 2.

The record does not indicate when, if ever, Wells Fargo's counsel informed Mr.

Fresquez that U.S. Bank, not Wells Fargo, was the holder of the promissory note.

On February 10, 2011, the court granted Mr. Fresquez' motion to substitute

Wells Fargo for Wells Fargo Home Mortgage of Hawaii, LLC as the named defendant.

Case No. 10-cv-02818-WYD-MJW (Docket No. 12).  On August 10, 2011, Mr. Fresquez

filed an amended complaint naming U.S. Bank as a defendant.  *Id.* (Docket No. 24).

On August 29, 2011, Bloom Murr & Accomazzo, P.C. filed an answer on behalf of U.S.

Bank.  Docket No. 19 at 4, ¶ 13.  In September 2011, Stewart Title retained Geoffrey P.

Anderson to represent U.S. Bank in the Fresquez suit.  *Id.* at 4, ¶ 14.  On October 14,

2011, Mr. Anderson communicated to Bloom Murr & Accomazzo, P.C. his intent to

enter an appearance in the Fresquez suit.  Docket No. 19-8 at 1.  U.S. Bank's amended

complaint in the instant case admits that counsel hired by Stewart Title represented

U.S. Bank in settlement negotiations with Mr. Fresquez.  Docket No. 8 at 4, ¶ 31.   On

January 30, 2013, Mr. Anderson formally entered his appearance in the Fresquez suit.

Case No. 10-cv-02818-WYD-MJW (Docket No. 53).

On January 17, 2013, U.S. Bank brought the instant case.  Docket No. 1.  U.S.

Bank's amended complaint brings a breach of contract claim against Stewart Title and

two claims of bad faith breach of policy for breach of the duty to defend and

unreasonable claims handling practices.  Docket No. 8 at 4-6.  With respect to U.S.

Bank's breach of contract claim, the amended complaint states that "U.S. Bank and

Wells Fargo request that judgment enter in their favor and against Stewart for the

damages suffered by US Bank and Wells Fargo."  *Id.* at 5.  However, Wells Fargo is not

named as a party in the instant case.

U.S. Bank moves for summary judgment on its breach of contract claim on the

issue of liability.  Docket No. 20 at 7.  Stewart Title moves for summary judgment on all

claims, arguing that it did not breach the insurance contract and that U.S. Bank's bad

faith claims are barred by the statute of limitations.  Docket No. 19 at 5, 9.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if

under the relevant substantive law it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary

judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An

issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a

verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir.

1997).

The nonmoving party may not rest solely on the allegations in the pleadings, but

5

instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (citing *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir.1994)).  "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party."  *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

## III.  ANALYSIS

U.S. Bank's breach of contract claim is vague.[5]  The amended complaint alleges that Stewart Title "failed to satisfy its obligations under the Title Policy and has breached the agreement," but does not otherwise clearly indicate how Stewart Title breached the policy.  Docket No. 8 at 5, ¶ 39.  U.S. Bank's motion for partial summary judgment argues that Stewart Title breached the policy by (1) failing to defend the

---

[5]Under Colorado law, to prove a breach of contract claim, a plaintiff must establish the following elements: (1) the existence of a contract; (2) plaintiff's performance or some justification for nonperformance; (3) defendant's failure to perform; and (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  U.S. Bank fails to identify what damages it suffered before becoming a party to the Fresquez suit.  Although Stewart Title hints at the existence of an indemnity agreement between U.S. Bank and Wells Fargo, Docket No. 23 at 1, the record contains no evidence or allegations upon which to conclude that such an agreement existed.  In other words, U.S. Bank provides no evidence upon which to conclude that U.S. Bank suffered any losses prior to being named in the Fresquez suit.  *See Gibraltar Sav. v. Commonwealth Land Title Ins. Co.*, 905 F.2d 1203, 1205 (8th Cir. 1990) ("[plaintiffs] did not suffer a loss as defined by the policy [because t]here has been no final judicial determination adverse to Lenders' mortgage lien.").  Nonetheless, Stewart Title does not raise the issue of damages in its motion for summary judgment.

Fresquez suit, (2) failing to take action to repair the defect in title, and (3) failing to defend the insured lien. Docket No. 20 at 7. Thus, U.S. Bank's breach of contract claim appears to hinge on Stewart Title's alleged breach of its duty to defend.

Stewart Title argues that Wells Fargo is not an "insured" under the terms of the policy and, as such, that it did not breach the terms of the policy by refusing to defend Wells Fargo in the Fresquez suit. Docket No. 19 at 9. U.S. Bank does not dispute that Wells Fargo is not an insured, but argues, in both its response brief and its motion for partial summary judgment, that the policy imposed upon Stewart Title a duty to defend the title or the lien of the insured mortgage against third party challenges regardless of whether U.S. Bank was a named party in the litigation. Docket No. 22 at 6-7; Docket No. 20 at 16-17.

U.S. Bank's claim for "Bad Faith Breach of Policy – Duty to Defend" alleges that a claim arose under the "Insured Lien" and that "Stewart had a duty to accept the Claim and provide a defense, but failed to timely do so." Docket No. 8 at 5, ¶¶ 43, 48. U.S. Bank's claim for "Bad Faith Breach of Policy – Unreasonable Claims-Handling Practices" alleges that Stewart Title "acted unreasonably in refusing to timely provide a defense" and "in derogation of well-settled Colorado law and industry standards." *Id.* at 6, ¶ 52, 54. Thus, U.S. Bank's bad faith claims are substantially based upon Stewart Title's alleged failure to defend the Fresquez suit. Stewart Title argues that, because it did not breach the policy, U.S. Bank's bad faith claims should be dismissed. Docket No. 19 at 9. Stewart Title also argues that U.S. Bank's bad faith claims are barred by the statute of limitations. *Id.*

The issue presented by both parties' motions is whether Stewart Title breached

7

the policy by refusing take action to defend Wells Fargo in the Fresquez suit or by

otherwise not attempting to cure any title defects until August 10, 2011, when Mr.

Fresquez named U.S. Bank as a defendant.

### A.  Insurance Policy Interpretation

The interpretation of an insurance policy is a matter of law.  *Allstate Ins. Co. v.*

*Huizar*, 52 P.3d 816, 819 (Colo. 2002).  An insurance policy is a contract, which should

be interpreted consistently with the well-settled principles of contractual interpretation.

*Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).  The words of the

contract should be given their plain meaning according to common usage and strained

constructions should be avoided.  *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo.

1990).  Clauses or phrases should not be viewed in isolation; rather, a policy's meaning

must be determined by examining the entire instrument.  *Huizar*, 52 P.3d at 819.  Policy

provisions that are clear and unambiguous should be enforced as written.  *Chacon*, 788

P.2d at 750.  Where a term in an insurance policy is ambiguous, meaning it is

susceptible to more than one reasonable interpretation, the Court will construe the term

against the drafter and in favor of providing coverage to the insured.  *Sachs v. Am.*

*Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010).

### B.  Who Is An "Insured" Under the Policy

The Court first examines the policy to determine who is an "insured" under the

policy.  Schedule A states that the named insured is "AAMES FUNDING

CORPORATION DBA AAMES HOME LOANS its successors and/or assigns."  Docket

No. 19-1 at 3.  The policy further states:

## CONDITIONS AND STIPULATIONS

1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "insured": the Insured named in Schedule A.  The term "insured" also includes

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations . . .

*       *       *

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

*       *       *

2. CONTINUATION OF INSURANCE

(a) After Acquisition of Title.  The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds . . . .

*Id.* at 9-10.

It is undisputed that Aames, the named insured, assigned the note to U.S. Bank.

Docket No. 19 at 2, ¶ 4.  U.S. Bank, however, does not claim that Wells Fargo was a

successor in interest to U.S. Bank, that U.S. Bank assigned Wells Fargo the note, or

that Wells Fargo acquired "any part of the estate or interest in the land."  *See* Docket

No. 19-1 at 10.  Instead, Wells Fargo is the loan servicer.  Docket No. 20 at 6, ¶ 6.  U.S. Bank admits that a loan servicer "administers and collects mortgage loans on behalf of the holder of the beneficial interest in the mortgage" and alleges that Wells Fargo had the authority to act on U.S. Bank's behalf with respect to the policy.  Docket No. 8 at 3, ¶ 18 n.1.  The Court finds as a matter of law that U.S. Bank, and not Wells Fargo, is the "insured" under the terms of the policy.

### C.  Duty to Defend

The Court next addresses U.S. Bank's argument that Stewart Title breached the insurance contract by refusing to defend the Fresquez suit.  Docket No. 22 at 5; Docket No. 20 at 10.  Under Colorado law, the duty to defend is separate and distinct from an insurer's obligation to indemnify its insured.  *See Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1086, n.5 (Colo. 1991).  While "[t]he duty to indemnify relates to the insurer's duty to satisfy a judgment entered against the insured, . . . [t]he duty to defend concerns an insurance company's duty to affirmatively defend its insured against pending claims."  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) (internal quotations and citations omitted).  The duty to defend is broader than the duty to indemnify such that "the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot."  *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 614 (Colo. 1999) (internal citations and quotations omitted).  Provided that "'the underlying complaint against the insure[d] alleges any facts that might fall within the coverage of the policy,' the carrier is under an initial duty to defend."  *Employers' Fire Ins. Co. v. W. Guar. Fund Serv.*, 924 P.2d 1107, 1111

(Colo. App. 1996) (quoting *Hecla Mining*, 811 P.2d at 1089).  "[T]he duty to defend must be determined based solely on a comparison of the allegations of the complaint made against the insured with the insuring provisions of the policy."  *Employers' Fire*, 924 P.2d at 1110.

Because Wells Fargo is not an insured under the policy, the Court looks to the language of the policy to determine if Stewart Title was obligated to defend anyone other than the insured.  The policy states:

> STEWART TITLE GUARANTY COMPANY . . . insures, as of Date of Policy shown in Schedule A, against loss or damage . . . sustained or incurred by the insured by reason of:
>
> > 1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
> >
> > 2. Any defect in or lien or encumbrance on the title . . .
> >
> > 5. The invalidity or unenforceability of the lien of the insured mortgage upon the title . . .
>
> The Company will also pay the costs, attorneys' fees and expenses incurred in the defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

Docket No. 19-1 at 6.  As noted in the last sentence, the scope of Stewart Title's obligation to pay costs, attorneys' fees, and expenses is controlled and defined by the Conditions and Stipulations.  The Conditions and Stipulations indicate that the insured under the policy is U.S. Bank as a successor in ownership of the indebtedness.

Section Three of the Conditions and Stipulations places upon the insured a duty to provide Stewart Title notice of litigation or notice of any claim adverse to the insured's interest:

3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable.

*Id.* at 10.  The policy does not explicitly allow any entity other than the insured claimant to provide Stewart Title notice on the insured claimant's behalf; however, "failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice."  *Id.*  Section Four of the Conditions and Stipulations specifically explains the scope of Stewart Title's obligation to defend under the policy and contemplates that Stewart Title may take other action to clear title:

4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.

(a) Upon written request by the insured . . . the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy . . . .  The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured.  The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy.  If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

*Id.* at 10-11.

The language of paragraph 4(a) is written in terms of the insurer's defense duties to "the insured."  The paragraph begins by stating "[u]pon written request of the insured" the insurer "shall provide for the defense of an insured in litigation. . . ."  *Id.*  Nothing about this language suggests that the insurer has duties to any entity other than the insured.  U.S. Bank focuses on the language in paragraph 4(a) that refers to "litigation in which any third party asserts a claim adverse to the title or interest as insured."  Docket No. 22 at 4.  U.S. Bank argues that *Fifth Third Mortgage Co. v. Chicago Title Insurance Co.*, 692 F.3d 507, 514 (6th Cir. 2012), interpreted the same language and supports its position that a duty to defend arises where the insured is not a named party.  In *Fifth Third*, the insured became a participant in the underlying litigation when it intervened in a foreclosure suit to protect its mortgage interest in the property.  *Id.* at 510.  The insurer argued that it had a duty to defend the insured only if the insured was a defendant in litigation.  *Id.* at 514.  The Sixth Circuit rejected the insurer's argument and, interpreting a policy nearly identical to the policy in the instant case, held that the insurer had a duty to defend the insured because the underlying claim was "*adverse to the insured.*"  *Id.* (emphasis in original).  Unlike the plaintiff in *Fifth Third*, U.S. Bank did not intervene in the underlying suit and was not otherwise a participant in the Fresquez suit until August 10, 2011.  Thus, *Fifth Third* is distinguishable and cannot be

interpreted as requiring an insurer to defend an action where, as here, the insured is not a participant.

As noted above, it order to determine whether an insurer is subject to a duty to defend, the court must decide whether the facts alleged in the complaint fall within the coverage of the policy.  *See Employers' Fire*, 924 P.2d at 1110.  U.S. Bank does not explain how a court can determine "facts that might fall within the coverage of the policy" when the underlying complaint does not name the insured in any capacity and the insured is not a party to the underlying litigation.  *See Hecla Mining*, 811 P.2d at 1089.  U.S. Bank argues that Stewart Title's obligation under the policy to "pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage" is expanded to situations where, as here, an entity other than the insured is engaged in litigation to defend the insured title.  *See* Docket No. 19-1 at 6.  The policy language U.S. Bank cites cannot, as U.S. Bank acknowledges, be interpreted in isolation; rather, the policy indicates that the scope of Stewart Title's obligation is controlled by the Conditions and Stipulations.  Paragraph 4(a) of the Conditions and Stipulations states that Stewart Title's obligation extends only to "the defense of an insured."  *Id.* at 11.  The Conditions and Stipulations do not place upon Stewart Title a duty to defend a suit where the insured is not a party to the proceeding and it is difficult to contemplate why a person or entity who is not the beneficial owner of the title would be defending the title in litigation.  Thus, the reasonable interpretation of Stewart Title's obligation to pay costs, attorneys' fees, and expenses is that such an obligation extends only to the costs, attorneys' fees, and expenses incurred *by the*

*insured* in litigation.  The Court finds that the terms of the policy are clear and unambiguous in this regard.

U.S. Bank relies on *Hecla Mining* for the proposition that Stewart Title had a duty to defend Wells Fargo when Wells Fargo notified Stewart Title of Mr. Fresquez' complaint.[6]  Docket No. 20 at 13.  In *Hecla Mining*, the Colorado Supreme Court held that the insurer had a duty to defend the insured in a suit where the insured was a defendant in the underlying litigation.  811 P.2d at 1085; *see also Employers' Fire*, 924 P.2d at 1111.  In this case, there was no "complaint made against the insured" until August 10, 2011.  *See Employers' Fire*, 924 P.2d at 1110.  U.S. Bank fails to show how Mr. Fresquez' declaratory judgment claim against Wells Fargo – a party with no interest in the underlying lien – would be "adverse to [U.S. Bank]" as contemplated by the policy.  *Cf. Hecla Mining*, 811 P.2d 1089 (holding that the duty to defend arises when the allegations in the complaint, if sustained, would impose a liability covered by the policy).  As such, U.S. Bank's reliance on *Hecla Mining* is misplaced.  *See Van Winkle v. Transamerica Title Ins. Co.*, 697 P.2d 784, 786 (Colo. App. 1984) (affirming trial court finding that policy language required title insurer to defend only the named insured).[7]

---

[6]U.S. Bank argues that Mr. Fresquez' complaint stated allegations within the policy's coverage such that Stewart Title's duty to defend the Fresquez suit arose on September 24, 2010, when Wells Fargo notified Stewart Title of Mr. Fresquez' complaint.  Docket No. 20 at 12-13.  Stewart Title argues that its duty to defend did not arise until U.S. Bank became a party to the Fresquez suit on August 10, 2011, when Mr. Fresquez amended his complaint to add U.S. Bank as a defendant.  Docket No. 19 at 9; Case No. 10-cv-02818-WYD-MJW (Docket No. 24).

[7]U.S. Bank's citations to other Colorado cases discussing an insurer's duty to defend are distinguishable for the same reason, namely, the insured was a party to the underlying action.  *See, e.g.*, *Sims v. Sperry*, 835 P.2d 565, 567 (Colo. App. 1992); *Wheeler v. Reese*, 835 P.2d 572, 573 (Colo. App. 1992).

The Court finds that the policy did not require Stewart Title to provide a defense to the Fresquez suit until such time as U.S. Bank became a party to the action.[8]  The Court will grant summary judgment in favor of Stewart Title on this issue.

### D.  Duty to Remedy the Title Defect and to Defend the Insured Mortgage

U.S. Bank argues that Stewart Title breached the policy by failing to take affirmative action to remedy the title defect and failing to take action to defend the title or the lien of the insured mortgage.  Docket No. 20 at 14-16.

The record does not indicate that U.S. Bank or Wells Fargo demanded that Stewart Title take action to remedy the title defect or requested that Stewart Title intervene in the Fresquez suit.  Rather, in its September 24, 2010 letter, Wells Fargo identified itself as the insured under the policy, said it was the holder of the deed of trust, which it referred to as the "Wells Fargo Deed of Trust," and requested only that Stewart Title provide "immediate defense and indemnity."  *See* Docket No. 20-7 at 1. Wells Fargo's initial letter did not mention U.S. Bank or indicate that Wells Fargo was the agent of the beneficial owner of the note.  *Id.*  Wells Fargo's February 9, 2011 letter to Stewart Title admitted that "U.S. Bank is the holder of the promissory note," but maintained that Stewart Title had a duty to defend Wells Fargo.  Docket No. 19-5.  U.S. Bank's breach of contract claim on this issue therefore turns on whether, absent a

---

[8]U.S. Bank also argues that loan servicers are the parties most likely to be named in a lawsuit challenging title to property securing a mortgage such that the policy would be rendered illusory if it did not cover the defense of lawsuits against loan servicers.  Docket No. 22 at 7.  However, U.S. Bank provides no factual or legal support for its argument.  Moreover, a loan servicer is highly likely to notify the insured, who would then have the ability to seek to intervene and become a party entitled to be defended.  As a result, the Court rejects U.S. Bank's argument that Stewart Title's interpretation of the policy renders the insurance policy illusory.

request from the insured, the policy's terms required Stewart Title to unilaterally remedy a defect in title or to intervene in the Fresquez suit to defend the insured mortgage after Wells Fargo put Stewart Title on notice that Mr. Fresquez was seeking to have the deed of trust declared void.[9]

There are two types of title insurance policies: an "owner's policy," which is purchased to protect the borrower/homeowner's property interest, and a "lender's policy," which is purchased to protect the lender's security interest. *Markocki v. Old Republic Nat'l Title Ins. Co.*, 254 F.R.D. 242, 245 (E.D. Penn. 2008). In either case, absent express provisions to the contrary, title insurance "is a contract of indemnity, and not a contract of guaranty or warranty." *Haines v. Old Republic Nat'l Title Ins. Co.*, 178 P.3d 1086, 1090 (Wyo. 2008); *see also First Fed. Sav. & Loan Ass'n of Fargo, N.D. v. Transamerica Title Ins. Co.*, 19 F.3d 528, 530 (10th Cir. 1994) (applying Colorado law); *Stewart Title Guar. Co. v. West*, 676 A.2d 953, 960 (Md. Ct. Spec. App. 1996) (collecting cases). "The policy does not purport to 'guarantee' title"; rather, "the insured must show actual loss sustained before recovery can be had." *Securities Serv., Inc. v. Transamerica Title Ins. Co.*, 583 P.2d 1217, 1221 (Wash. App. 1978). When an insurer is notified of a threat to title the insurer can choose among three options: "(1) pay the insured for the loss up to the amount of the coverage limits of the policy; (2) clear the title defect within a reasonable time; or (3) show that the alleged unmarketability or

---

[9]Even assuming such a duty existed under the policy, U.S. Bank fails to explain how Stewart Title could have remedied the title defect under these facts. However, for the reasons stated below, it is unnecessary to parse U.S. Bank's allegations for a coherent theory of liability because the Court finds that U.S. Bank's claim fails.

other title problems do not really exist." *Haines*, 178 P.3d at 1090.  However, although

the insurer retains the option to clear the title defect, it is generally under no obligation

to do so.  *See* 11 Couch on Insurance § 159:9.  This interpretation is consonant with

the purpose of a lender's policy, which is to protect a lender's security interest.  *Cf.*

*Markocki*, 254 F.R.D. at 245 ("an owner's policy [is] generally purchased . . . to protect

the borrower's property interest").

The Court turns to the policy's terms to determine whether Stewart Title has a

"right" or a "duty" to institute litigation or take other action to establish title.  The policy

states:

> The Company will also pay the costs, attorneys' fees and expenses incurred
> in defense of the title or the lien of the insured mortgage, as insured, but only
> to the extent provided in the Conditions and Stipulations.

Docket No. 19-1 at 6.  U.S. Bank argues that Stewart Title's obligation to "pay the costs,

attorneys' fees and expenses incurred in defense of the title or the lien of the insured

mortgage" places a broad duty on Stewart Title to take action to clear title or intervene

in litigation to defend the insured mortgage.  U.S. Bank, however, fails to account for

the remainder of the provision which provides that Stewart Title is obligated "only to the

extent provided in the Conditions and Stipulations."  *See id.* at 6.  Paragraph 4(b) of the

Conditions and Stipulations plainly indicates that Stewart Title shall have the "right" to

take whatever action "in its opinion" may be necessary to protect or establish title.  *See*

Docket No. 19-1 at 11.  Stewart Title "may," rather than must, take such action, but,

should Stewart Title decide to exercise "*its rights*," it must do so diligently.  *Id.*

(emphasis added).  Paragraph 4(b) does not place an independent duty to act on

Stewart Title; rather, the paragraph mentions only Stewart Title's rights under the policy and Stewart Title's option to take whatever action it deems necessary.  If the provision cited by U.S. Bank created as broad a duty as U.S. Bank argues, Paragraph 4(b) would have been drafted differently to capture the reasonable expectations of the insured, such as providing that Stewart Title "shall institute" a defense of the insured mortgage or that Stewart Title have "the obligation to institute" action to clear title.  Paragraph 4(b) contains no such mandatory language.  Moreover, the policy must be interpreted as a whole.  Were Stewart Title under the same obligation to defend the insured and unilaterally cure title defects, the differences between the language of paragraph 4(a) and paragraph 4(b) would be left unexplained.

U.S. Bank argues that the policy describes the interest being insured as the "estate or interest in the land identified in this Schedule A and which is encumbered by the insured mortgage in fee simple and is at the Date of Policy vested in the borrower(s) shown in the insured mortgage and named above."  Docket No. 19-1 at 3.  However, the Conditions and Stipulations plainly do not contemplate defense of the insured mortgage.  As noted above, Stewart Title's obligation is to "provide for the defense of an insured" as defined by the policy and Stewart Title has the discretion to institute litigation or otherwise act to protect "the lien of the insured mortgage." *Id.* at 11.

The policy also explicitly states that the policy is one of indemnity and that Stewart Title is liable for costs, attorneys' fees, and expenses only to the extent permitted by Section Four:

7. DETERMINATION AND EXTENT OF LIABILITY.

This policy is a contract of indemnity against actual monetary loss or damage

sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

*     *     *

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

8.  LIMITATION OF LIABILITY

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonable diligent manner by any method, including litigation . . . it shall have fully preformed its obligation with this respect to that matter . . . .

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

Docket No. 19-1 at 12-13.  These policy provisions do not support U.S. Bank's assertion that the policy creates a duty to defend the title independent of the insurer's duty to defend the insured.  If anything, these provisions reinforce the interpretation of the policy that Stewart Title's duties are defined in relationship to the insured.  The policy's stated purpose is "a contract of indemnity against actual monetary loss or damage sustained or incurred *by the insured*" and Paragraph 7(c) states that Stewart Title will only pay "those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations."[10]  *Id.* at 12-13 (emphasis added).

---

[10]U.S. Bank fails to produce any evidence suggesting that it incurred costs and attorney's fees prior to being named as a defendant in the Fresquez suit.

The Colorado Supreme Court has not decided if ALTA policy language places on an insurer the affirmative duty to cure a title defect.  Other jurisdictions considering the question have reached varying conclusions.  Courts that closely adhere to the text of ALTA policies hold that an insurer's duty to indemnify or otherwise act to cure title defects does not arise until a final determination by a court.  *See Willow Ridge Ltd. P'ship v. Stewart Title Guar. Co.*, 706 F. Supp. 477, 482 (S.D. Miss. 1988); *see also Securities Service*, 583 P.2d at 1221 (holding that the insured must show actual loss before recovering under the policy and that the policy did not impose a broad duty on insurer to "clear title"); *Childs v. Miss. Valley Title Ins. Co.*, 359 So.2d 1146, 1150, 1152 (Ala. 1978) (interpreting similar policy language and holding that, in bad faith action, insurer had no duty to take affirmative action to clear title against an adverse claim to title).  In *Willow Ridge*, where the foreclosure and transfer of title on the underlying property occurred prior to any determination as to the validity of the liens, the insurer did not breach its obligation by "failing to obtain discharge of the liens."  706 F. Supp. at 482.  "While a suit to clear title was an option available to [the insurer], it was an option and nothing more than that."  *Id.* at 483.

U.S. Bank relies on *Ticor Title Insurance Co. v. University Creek, Inc.*, 767 F. Supp. 1127, 1130 (M.D. Fla. 1991), where the court construed an owner's title insurance policy.  The court did not interpret the insurance policy as requiring the insurer to bring suit to remedy a title defect, but held that the policy "contemplates that [the insurer] will take some action to remove an encumbrance within a reasonable time after receiving notice of it."  *Id.* at 1137.  However, unlike the instant case, the insured in

*Ticor* intervened in a suit over the underlying property and the insured repeatedly refused to take any action for over seven months.  *Id.* at 1132-33.

U.S. Bank also cites *Summonte v. First American Title Insurance Co.*, 436 A.2d 110 (N.J. Super. Ct. Ch. Div. 1981), in support of its argument that Stewart Title breached a duty to remedy the title defect.  In *Summonte*, the insured requested that the title insurer remove a lien from the insured's property pursuant to an owner's title insurance policy.  *Id.* at 111.  The insurer acquired the lien, but refused to remove the lien and litigation ensued.  *Id.*  The court interpreted policy language similar to the policy at issue here and, construing the policy in favor of the insured, held that the right to establish title was a "mandatory alternative to the obligation to defend."  *Id.* at 115. Because "no litigation had commenced requiring a defense, the insurer was obliged to remove the defect."  *Id.* at 116.  The court also noted that, because the insurer owned the lien, principles of equity dictated that it remove the lien rather than requiring the insured to pay the amount due to the insurer, only to have the insurer reimburse the insured.  *Id.*

The holding in *Summonte* is based upon unusual facts; the insured was left without any recourse because its insurer was both lien holder and insurer.  *Id.*  Here, U.S. Bank had at least two options: one, intervene in the Fresquez suit, thereby requiring Stewart Title to defend the suit; or, two, wait until the Fresquez suit concluded and, in the event that the declaratory judgment was enforceable against U.S. Bank, recover damages under the policy, which would in no event exceed the policy limit of

$120,000.[11]  *See* Docket No. 19-1 at 3.

The Court finds that, pursuant to the policy and under the facts of this particular case, Stewart Title had no duty to take unilateral action to clear title or intervene to defend the insured mortgage.

To the extent U.S. Bank's breach of contract claim is based upon Stewart Title's alleged acts or omissions prior to August 10, 2011, U.S. Bank has failed to raise a genuine dispute as to any material fact in opposition to Stewart Title's motion for summary judgment.  Thus, as to conduct occurring prior to August 10, 2011, the Court will grant Stewart Title's motion for summary judgment on U.S. Bank's breach of contract claim.

Stewart Title admits that its duty to defend arose on August 10, 2011, when U.S. Bank was named in the Fresquez suit.  Docket No. 19 at 9.  U.S. Bank's amended complaint alleges that, after August 10, 2011, Stewart Title delayed tendering a defense and "refused to pay any amount to facilitate the proposed settlement."  Docket No. 8 at 4, ¶¶ 27-33.  Because neither party addresses these allegations as they relate to Stewart Title's obligations after its duty to defend arose, the Court will deny summary judgment on U.S. Bank's breach of contract claim to the extent it is based on Stewart Title's acts or omissions occurring after August 10, 2011.

_____

[11]Even though jurisdictions differ in interpreting ALTA policies, the weight of authority requires an insurer who has undertaken an action to clear title to do so in a reasonable amount of time and without undue delay. *See Willow Ridge*, 706 F. Supp. at 483; *First Federal*, 19 F.3d at 531.  In this case, however, U.S. Bank provides no evidence upon which to conclude that it or Wells Fargo requested Stewart Title take action to clear title.  Instead, Wells Fargo continued to demand that Stewart Title defend the suit and indemnify Wells Fargo even after Wells Fargo's counsel admitted that U.S. Bank was the beneficial owner of the note.

### E.  Bad Faith Claims

U.S. Bank's bad faith claims allege that "Stewart had a duty to accept the Claim and provide a defense, but failed to timely do so."  Docket No. 8 at 5, ¶¶ 43, 48.  U.S. Bank also alleges that Stewart Title "acted unreasonably in refusing to timely provide a defense."  *Id.* at 6, ¶ 52.  Thus, based on the amended complaint, it appears that U.S. Bank's bad faith claims are based primarily on Stewart Title's refusal to defend the Fresquez suit.

Stewart Title argues that U.S. Bank's bad faith breach of insurance policy claims should be dismissed for the same reasons as U.S. Bank's breach of contract claim, namely, that Stewart Title did not breach the policy before U.S. Bank was named in the Fresquez suit.  Docket No. 23 at 4.  "To establish the tort of bad faith breach of an insurance contract, a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness."  *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003).  "Bad faith breach of an insurance contract encompasses the entire course of conduct and is cumulative."  *Id.* However, bad faith claims exist "independently of the liability imposed by an insurance contract."  *Pham*, 70 P.3d at 571; *see also Flickinger v. Ninth Dist. Production Credit Ass'n of Wichita, Kan.*, 824 P.2d 19, 24 (Colo. App. 1991) ("[bad faith] is not a claim arising under the pertinent policy; it is, rather, a claim that exists independently from the liability imposed by the insurance contract").  "The carrier's tort liability, therefore, does not depend upon its liability under the insurance contract."  *Id.*

U.S. Bank does not directly respond to Stewart Title's argument or produce any

evidence to support its bad faith claims.  *See* Docket No.  22 at 4; Docket No. 20 at 17.

However, Stewart Title fails to explain why a finding that it did not breach the insurance

policy compels the dismissal of U.S. Bank's bad faith claims, which are not dependent

upon contractual liability and are based upon the entire course of conduct between the

insurer and the insured.  *See Pham*, 70 P.3d at 572.  Thus, Stewart Title is not entitled

to summary judgment on U.S. Bank's bad faith claims.

Stewart Title also argues that U.S. Bank's claims for bad faith breach of policy

are barred by the statute of limitations.  Docket No. 19 at 9.  Bad faith actions must be

"commenced within two years after the cause of action accrues."  Colo. Rev. Stat. § 13-

80-102(1)(a).  A bad faith cause of action accrues "on the date both the injury and its

cause are known or should have been known by the exercise of reasonable diligence."

Colo. Rev. Stat. § 13-80-108; *accord Brodeur v. Am. Home Assurance Co.*, 169 P.3d

139, 147 (Colo. 2007) (applying § 13-80-108 to bad faith tort claim).  As noted above,

bad faith claims are independent of contractual liability.  *Pham*, 70 P.3d at 571.  "Each

bad faith act constitutes a separate and distinct tortious act, on which the statute of

limitation begins to run anew when plaintiff becomes aware of the injury and its cause."

*Cork v. Sentry Ins.*, 194 P.3d 422, 427 (Colo. App. 2008).

Stewart Title raises this issue on summary judgment, which shifts the burden

back to U.S. Bank to show a genuine dispute of material fact as to when it knew or

should have known of its injury and the injury's cause.  *Bausman,* 252 F.3d at 1115.

U.S. Bank argues that it could not have known of its injury until January 20, 2011, when

Stewart Title denied coverage.  Docket No. 22 at 10.  Stewart Title responds, without

citation to the record, that it informed U.S. Bank on numerous occasions prior to January 20, 2011 that it would deny coverage.  Docket No. 23 at 6.  However, according to the record, Stewart Title denied coverage to Wells Fargo.  Docket No. 19-3.  The record is devoid of any evidence indicating when U.S. Bank learned of the Fresquez suit, learned of Wells Fargo's request for coverage, and learned of Stewart Title's denial.  The fact that U.S. Bank and Wells Fargo were represented by the same counsel after U.S. Bank joined the Fresquez suit does not serve to impute Wells Fargo's knowledge to U.S. Bank prior to U.S. Bank joining the Fresquez suit.  Accordingly, since neither party has presented any evidence as to when U.S. Bank learned of an injury and its cause, the Court finds that Stewart Title is not entitled to summary judgment on its statute of limitations defense.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 19] is **GRANTED** in part and **DENIED** in part as indicated in this Order.  It is further

**ORDERED** that plaintiff's Motion for Partial Summary Judgment [Docket No. 20] is **DENIED**.

DATED March 20, 2014.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

26